### VACUUM CLEANER CO. v. AMERICAN ROTARY VALVE CO.

(District Court, S. D. New York. September 30, 1915.)

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—VACUUM CLEANER.
   The Kenney patent, No. 847,947, for apparatus for removing dust, covering the first commercially successful vacuum cleaner, claims 1, 3, and 4, were not anticipated, either in the prior patent art or by prior use, and disclose patentable invention; also *held* infringed; claim 2, in which the slot is not described as "narrow," *held* void for lack of invention, in view of the prior art.

2. PATENTS ☞328—VALIDITY—VACUUM CLEANER.
   The Kenney patent, No. 847,948, for apparatus for removing dust, *held* void for lack of patentable novelty.

3. PATENTS ☞35—VALIDITY—EVIDENCE—COMMERCIAL UTILITY.
   The commercial utility and success of a patented article, which shows the result of the experience of the workaday outside world, is entitled to great weight on the question of the validity of the patent, when in doubt. This rule places achievement above forgotten files and file wrappers, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is frequently an aid to the conclusion that what seems simple to-day was an unsolved problem yesterday.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. ☞35.]

In Equity. Suit by the Vacuum Cleaner Company against the American Rotary Valve Company for infringement of claims 1, 2, 3, and 4 of United States letters patent No. 847,947, dated March 19, 1907, application filed November 29, 1901, and the single claim of United States letters patent No. 847,948, application filed March 16, 1903, each for "apparatus for removing. dust." For convenience, the patents will be called the first patent and the second patent. On final hearing. Decree for complainant.

See, also, 208 Fed. 419.

Charles Neave, William G. McKnight, Vernon M. Dorsey, and Frank C. Cole, all of New York City, for plaintiff.

W. Clyde Jones, of Chicago, Ill., and John Robert Taylor, of New York City, for defendant.

MAYER, District Judge. The object of the first patent is stated in the specification as follows:

"The object of the invention is to provide an apparatus by which the cleaning or removing of dust may be accomplished with ease and dispatch and to practically clean any suitable surface, object, or article from every adhering particle of dust or dirt which can be removed. In the present invention suction is utilized, so that the dust or dirt is sucked into the apparatus and entirely removed from the compartment or room in which the dust was originally. The apparatus employed comprises in combination a suction nozzle adapted to be moved over the surface to which it is applied for cleaning and having a narrow inlet slot, a suction-creating device capable of maintaining a sufficient vacuum, and impurities-collecting means between the nozzle and suction-creating device and suitably connected therewith for removing the impurities from the air. When the apparatus is employed for cleaning carpets or other fabrics, the air is forced to penetrate the fabric at the suction nozzle, whereby the dust is removed from the body of the fabric as well as from the surface without subjecting the fabric to any mechanical action that will wear it away. * * * *The slot is restricted and narrow, and the bounding and defining lips thereof are so disposed that the outward mouth of the slot lies in what when the cleaner is in use constitutes the contact surface of the implement, so that it will hug the surface to be cleaned.*"

The claims are:

"1. In a suction-cleaning apparatus, the combination of a suction nozzle adapted to be moved over the surface to which it is applied for cleaning and having a narrow inlet slot, a suction-creating device capable of maintaining a sufficient vacuum, and impurities-collecting means between the nozzle and the suction-creating device and suitably connected therewith for removing the impurities from the air, substantially as described.

"2. In an apparatus for removing dust or dirt, the combination of a suction-creating device capable of maintaining a sufficient vacuum, an inlet head or shoe having an unobstructed elongated slot and so constructed that the edges of the slot may be brought into contact with the surface of the object to be cleaned, and a separator intermediate of and suitably connected with the suction-creating device and the inlet head or shoe for removing the dust from the air, substantially as described.

"3. In a suction-cleaning apparatus, the combination of a suction nozzle adapted to be moved over the surface to which it is applied for cleaning and having a narrow inlet slot, a power-operated suction pump, and impurity-col-

lecting means between said nozzle and pump adapted to remove the impurities from the air and prevent fouling the pump while permitting the working vacuum to be maintained at the nozzle, substantially as described.

"4. A cleaner comprising a suction chamber, provided with a narrow inlet slot, the slot being bounded and defined by lips which lie in the contact surface of the cleaner, with the outward mouth of the slot lying in the plane of this contact surface, substantially as described."

The defenses are (1) anticipation; (2) lack of novelty; (3) prior use; and (4) noninfringement.

The commercial vacuum cleaner art has grown to substantial proportions and has been developed in two general directions: (1) The installation of plants in large buildings; and (2) the use in smaller areas, business and home, of single implements operated by hand or electric motive power. So rapidly has the commercial art grown that this suits seems to involve a controversy of substantial importance financially (the gross business of the Vacuum Company from 1905 to September 27, 1907, aggregating over $800,000, and the plaintiff, as the Vacuum Company's reorganized successor, having received since 1909 about $270,000 in license fees), and thus the defendant has presented a vigorous defense, especially in respect of the prior art and a certain prior use, known in the litigation as the "Westman defense."

There is no doubt that Kenney, the patentee, was the founder of the present vacuum cleaner commercial art, and that, prior to his time, efforts in the same direction resulted either in indifferent success or in absolute failure, although as far back as 1869 inventors had turned their attention to the subject-matter here concerned. McGaffey patent, No. 91,145, same as Lake British patent.

Defendant insists that the development of the art is largely due to natural increase of buildings and greater desire for easy and effective methods of cleanliness, and also to the warnings of scientific men in respect of badly behaved germs which find their nesting and developing places more particularly in dust-laden fabrics and floors; but I suppose that even in 1869 prudent housewives and others would have welcomed a labor-saving device for removing dust from floors and furniture, and as early as 1896 Messrs. Young and Douglass appreciated the problem of seeking out the "many nooks and corners not accessible to the broom, where the dust and dirt settle and accumulate, making nesting places for microbes and breeding disease. * * *" But neither they nor any one else prior to Kenney accomplished the result sufficiently to found or maintain any substantial business enterprise based upon their alleged inventions.

The success of Kenney was not accidental, nor is this a case where previous meritorious inventions have failed for want of capital. Kenney was almost the story book inventor. In 1901, when he made his invention, he had a cash capital of not more than $500, and he was working on a salary of $40 to $50 per week.

Mr. Foley, consulting engineer during the construction of the Frick Building in Pittsburg, met Kenney in New York in 1901, and, learning of Kenney's apparatus, went to Kenney's small room in Trinity Place, where experimental work was being carried on. Foley was sufficiently impressed, so that, after negotiation, the Kenney system

was installed in the Frick Building in May, 1902. The public demonstration of the operation of the Kenney vacuum cleaning installation was described in some Pittsburg newspapers, and thereafter the business grew by leaps and bounds, and after some changing of hands the patents are now owned by this plaintiff.

A history of the prior art will help to show why Kenney succeeded, where others theretofore failed. Like many combination patents, the principal elements of claims 1, 2, 3 of the first patent, speaking broadly, were old—i. e., (1) a suction-creating device; (2) a cleaning tool; and (3) a separator. In claim 4, for the cleaning tool, the emphasized characteristics are: (1) A narrow inlet slot, bounded by (2) lips which lie in the contact surface of the cleaner, with the outward mouth of the slot lying in the plane of this contact surface.

The testimony of the two experts, Professors Reeve and Kinealy, and the demonstrations in the courtroom, were interesting and to the point; but the situation gets down to the proposition that Kenney taught the art that the essential element was a narrow, elongated slot capable of contact or sealing with the surface to be cleaned. This element, co-operating with the others, produces for all practical purposes a vacuum, whereby the dirt is sucked up, as distinguished from an air current, where the material is blown up, and some of it escapes, although the surface seems to the layman's eye to be cleaned.

The prior art proceeded on the theory of noncontacting or nonsealing slots, or impracticable wide slots, and some of the illustrative apparatus, from a practical standpoint, were grotesque. McGaffey (No. 91,145 of 1869) depended on a "strong current of air * * * to take up the dust and dirt." The opening in the lower portion of the sweeper implement, situated near the front edge when in use, came "near the floor or carpets, leaving only sufficient space between to allow small particles of dust and dirt to pass under it. * * * *" The model from the files of the Patent Office fully illustrates this theory, and thus it appears that, instead of contact or sealing, as in Kenney, there is not any close contact, nor any suggestion of the so-called vacuum idea.

In 1883 Leaycroft (No. 279,572) approached the problem on the theory of a sweeping apparatus, in which the dirt is removed from the surface to be swept by brushes, and a current of air used to convey the dirt into a retainer.

Cummings in 1891 (No. 460,935) shows a cleaning tool, the edges of the slot of which are adapted to rest upon the surface to be cleaned, but the opening in the bottom of the cleaning tool is very wide. Obviously, if Cummings had any thought of producing a vacuum, the tool was impracticable, because it would be sealed to the surface to be cleaned and not be moveable for practical purposes.

Much was made of the British Howard and Taite patents No. 10,271 of 1896, and defendant produced a model (Defendant's Exhibit No. 243) so constructed that the slot, though curved in outline, lies in a plane surface, so that it would make contact when moved over the surface; but I do not accept this as a correct representation, and it is certainly inconsistent with Figures 1 and 3 of the drawings. On the other hand,

plaintiff's model (Plaintiff's Exhibit 24) is correct, and is useful by way of illustrating the specification, particularly where it is provided that:

"If the front end of the apparatus be passed over a cushion, * * * such dust will be sucked up with the air current, * * *" and that "the inlet or inlets is or are moved over and *near* to the surface of a dusty cushion or other dusty article."

In other words, Howard and Taite failed to realize the theory of close contact and the production of a vacuum, instead of an air current.

J. J. Harvey (No. 577,854 of 1897) did not get away from the air current idea and had no conception of sealing contact, as is shown by his Figure 14, where the nozzle is open at both ends. The combined area of the openings at the ends of the slots is greater than that of the outlet pipe, and it is obvious that the device could not secure a practical vacuum at the slot.

In Westman (No. 628,505 of 1899) the inlet slot is not narrow, and the theory is to abrade the carpet and liberate the dust, which is then removed by a revolving brush and drawn by suction through a flexible hose into a settling box; some of the dust undoubtedly passing on into an exhaust fan. The Westman is certainly far removed from similarity to the Kenney first patent.

Much reliance is placed by defendant on the C. J. Harvey patent (No. 673,603 of May 7, 1901). There is no reference in the specification to the dimensions of the slot in the nozzles shown in Figures 3 and 5, and nothing to show that the slots are to seal with the surface to be cleaned. In Figures 1, 2, and 3 a circular nozzle is shown, surrounded by a brush and bellows arrangement, while in Figures 4 and 5, although there is "an elongated nozzle," it is shown as being elevated above the surface by means of rollers.

The scientific discussion of this patent may be found by those who are interested in the testimony of Professors Reeve and Kinealy; but the actual operation of the model (Defendant's Exhibit No. 285) made in accordance with Figure 5 of the patent, is its own condemnation, for, as a practical device, it was shown to be hopeless. The other patents cited in the prior art are not of sufficient merit to require comment.

[3] From the foregoing it will be seen that there is no patent which anticipates, and the many efforts prior to Kenney only serve to fortify the presumption of patentability which goes with the grant. But, if there were any doubt, commercial utility has resolved the doubt. I am a strong believer in the rule as to commercial utility. It often pierces a labyrinth of the technique of science and the law, and applies the experience of the big workaday outside world. It places achievement above forgotten files and file wrappers. It is frequently an aid to the conclusion that what seems simple to-day was an unsolved problem yesterday.

But, as we are dealing with an actual litigation, it becomes necessary to examine the claims in their bearing on validity and infringement. The important point about Kenney's invention was the construction of the cleaning tool, and almost every word in claim 4 is significant. So, also, in claims 1, 2, and 3 the combination of the tool described in claim 4 must appear, else the claim may be invalid, or an alleged infringing

device may not deserve condemnation. It will be noted that in claims 1 and 3 the inlet slot is described as "narrow," just as it is in claim 4; but in claim 2 the reference is to an "unobstructed elongated slot" and the word "narrow" is omitted.

Of course, as is well known, an applicant for a patent will use varying phraseology in his claims, in order to obtain as comprehensive a patent as possible, or/and by such use to avoid the pitfalls of language, so that later, if one claim is inaptly worded, some other claim will stand the test of attack. But where, as here, the patent is not entitled to too broad a scope, the omission of the word "narrow" must be regarded as significant, and the context does not help it out. In view of the prior art, this claim must be held to be void (Cummings and C. J. Harvey patents, more especially).

Claim 1 (as well as 2) is attacked because of the use of the words "sufficient vacuum." What was said in Woerheide v. H. W. Johns-Manville Co., 215 Fed. 604, and 220 Fed. 674, 136 C. C. A. 316, applies here. It is not possible, when dealing with fractional niceties, to use any safer language, else the risk is run of escape from the patent by some technical scientific variation.

As relating to infringement, it is clear that Plaintiff's Exhibits 3U and 3V, which are cleaners faced with felt, do not infringe; but it is claimed that, because the felt may or will wear away, contributory infringement must be found. There is no evidence to show any intent to use wrongfully these implements, and, in point of fact, I think there is not any such intention; but, in any event, plaintiff must produce some evidence before defendant can be held guilty of this tort.

In arriving at these conclusions, I have considered it unnecessary to discuss the details of the development of the art as relating to motive power and separators, because I have accepted these elements as old. Further, I have not overlooked the decisions of foreign courts, but I am quite in agreement with the views of Judge Dodge as stated in Haskell Golf Ball Co. v. Sporting Goods Sales Co., 210 Fed. at page 628.

But, even if the records were precisely the same, I am bound to reach an independent conclusion, and, although the decisions referred to are entitled to great respect, yet we all know how, even in our own courts, judges of long experience and recognized ability often differ, because of the very nature of the subject, on questions of patentable novelty and infringement.

Finally, the Westman defense is to be considered. From the mass of testimony taken and the earnest argument, it is apparent that the defendant relies strongly on this defense. To attempt to review the testimony pro and con would be to extend this opinion almost to the length of the combined briefs. I am not convinced beyond a reasonable doubt, in the main for the following reasons, which I will summarize:

(1) The conflict of testimony in respect of a device as to the identity of which there is nothing but oral testimony.

(2) The failure of Westman to accomplish any substantial results, although living in Richmond and Norfolk, both fair-sized communities, and especially the failure of the apparatus at the Hotel Walton, Philadelphia, and Hotel Chamberlain, at Old Point Comfort.

(3) Westman's letter to his nephew in December, 1900, and the correspondence with the Roots Company.

(4) The fact that Westman obtained a patent, No. 628,505, in 1899, which in no way approaches the Kenney idea, but is along a different theory. In this connection, I am not unmindful of the summing up of defendant's counsel; but, as Westman applied for one patent, I do not see why, if he had the device claimed, he should not have applied for a patent for that.

In brief, this branch of the case must be governed by the principles stated in such cases as Emerson & Norris Co. v. Simpson Bros. Corp., 202 Fed. 747, at page 750, 121 C. C. A. 113; De Laski & Thropp, etc., Co. v. Fisk Rubber Co., 203 Fed. 986, 122 C. C. A. 286; The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153; Lalance & Gresjean Co. v. Habermann Mfg. Co. (C. C.) 53 Fed. 375. I therefore conclude that claim 2 of the first patent is invalid, but that claims 1, 3, and 4 are valid and infringed, except as indicated supra.

[2] As to the second patent, I think it is invalid for lack of patentable novelty, and, as this result seems inevitable, once the art is understood, I see no value in any discussion of this patent.

Plaintiff may propose a decree on five days' notice in accordance herewith, but without costs.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes