VACUUM CLEANER CO. v. INNOVATION ELECTRIC CO., Inc.

(Circuit Court of Appeals, Second Circuit.    December 20, 1916.)

No. 132.

1. PATENTS ⬤⟳328—VALIDITY AND INFRINGEMENT—VACUUM CLEANER.

The Kenney patent, No. 847,947, for a vacuum cleaner, was not anticipated, and discloses invention of a fundamental character, which entitles its claims to a broad construction; also *held* infringed.

2. PATENTS ⬤⟳176—CONSTRUCTION OF CLAIMS—"NARROW."

The word "narrow," as used in the claims of a patent in describing the inlet slot of a vacuum cleaner, is not to be regarded as imposing an exact mathematical limitation, or as depriving the patentee of any variation consistent with the principle of operation of the device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250⅔–252.

For other definitions, see Words and Phrases, Second Series, Narrow.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Vacuum Cleaner Company against the Innovation Electric Company, Incorporated.    Decree for complainant, and defendant appeals.    Affirmed.

For opinion below, see 234 Fed. 942.

This is an appeal from a decree of the District Court for the Southern District of New York, adjudging valid the fourth claim of letters patent No. 847,947, and granting a permanent injunction against infringement and an accounting of profits and damages subsequent to October, 1915.    The patent is for a vacuum cleaner, and was before Judge Mayer, who heard the present case, in the prior case of Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 227 Fed. 998, where it was held valid as to claims 1, 3, and 4, and infringed.

Francis W. Parker, of Chicago, Ill., and A. L. Kent, of New York City, for appellant.

Charles Neave, William G. McKnight, and Frank C. Cole, all of New York City, for appellee.

Before WARD and ROGERS, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

AUGUSTUS N. HAND, District Judge.    [1] The fourth claim of the patent, which alone is in question in this suit, reads as follows:

"4. A cleaner comprising a suction chamber, provided with a narrow inlet-slot, the slot being bounded and defined by lips which lie in the contact-surface of the cleaner, with the outward mouth of the slot lying in the plane of this contact-surface substantially as described."

The patentee in his specification says:

"The object of the invention is to provide an apparatus by which the cleaning or removing of dust may be accomplished with ease and dispatch and to practically clean any suitable surface, object, or article from every adhering particle of dust or dirt which can be removed."

"In the present invention suction is utilized, so that the dust or dirt is sucked into the apparatus and entirely removed from the compartment or room in which the dust was originally.    The apparatus employed comprises in

combination a suction-nozzle adapted to be moved over the surface to which it is applied for cleaning and having a narrow inlet-slot, a suction-creating device capable of maintaining a sufficient vacuum, and impurities-collecting means between the nozzle and suction-creating device and suitably connected therewith for removing the impurities from the air. When the apparatus is employed for cleaning carpets or other fabrics, the air is forced to penetrate the fabric at the suction-nozzle, whereby the dust is removed from the body of the fabric as well as from the surface without subjecting the fabric to any mechanical action that will wear it away."

*    *    *    *    *    *    *    *    *

"The slot is restricted and narrow, and the bounding and defining lips thereof are so disposed that the outward mouth of the slot lies in what when the cleaner is in use constitutes the contact-surface of the implement, so that it will hug the surface to be cleaned."

Defendant earnestly insists that the vital elements of claim 4 are:

(1) A suction chamber of large cross-section as compared with its inlet-slot and as distinguished from an open-mouthed box.

(2) A narrow slitlike slot less than one-half inch, and preferably not more than one-eighth inch in width..

(3) Lips protruding at the sides of the slot so close together that they can be forced down into cracks and crevices and deep into the carpet, and will permit the tool to be rocked by its rigid handle without displacement of the lips.

In regard to the suction-chamber, claim 4 of the patent in suit first appeared as claim 1 of Kenney's application, serial No. 147,968, filed March 16, 1903, which afterwards resulted in patent No. 847,948. The only difference in the language of the two claims is that claim 1 originally described the inlet-slot as "restricted," whereas, later, it was, upon amendment, described as "narrow." In the application for patent No. 847,948, Kenney said:

"The suction-chamber in the stock is merely a communicating passage-way for the air between the slot and the tubular portion of this passage-way. It is of sufficient capacity to freely allow the air to pass, and is without sharp corners or enlarged portions where the velocity of the air can become reduced and the dust deposited."

This claim was rejected by the primary examiner on the patents to Howard and Thurman, among others. On appeal from his decision, the board of examiners said (Record page 1002):

"Claim 1 is rejected by the examiner upon the patents to Howard and Thurman.

"Thurman's patent was granted on an application filed December 17, 1901. This applicant has on file another application filed November 29, 1901, serial No. 84,058, disclosing the subject-matter of this claim. Thurman's patent is therefore too late in date to be an anticipation.

"The patent to Howard shows a suction-nozzle for use in a device of this kind, which has a long narrow slot, but instead of lying in the plane of the contact-surface, the end of the nozzle is arc-shaped. While the difference in structure is small, the curve on the end of the nozzle would render the device inoperative for the appellant's purpose. This claim is, in our opinion, allowable."

The examiners in chief thereupon reversed the examiner as to claim 1, and ordered it transferred to the application for the patent in suit, and it was so transferred and became claim 4 hereof. It seems clear therefore that the statement in the specification of the application from

which this claim was taken, to the effect that a suction chamber "is merely a communicating passage-way for the air between the slot and the tubular portion of this passage-way," is to be fairly regarded as the construction put by Kenney himself upon the words "suction-chamber." It may be added that the definition of a suction-chamber given above is the only specific definition given of it throughout the various Kenney applications in which the word is used, and nowhere is it said that it must be relatively large. The argument advanced by defendant that the definition of "suction-chamber" referred to above related only to certain structures in application, serial No. 147,968, is not convincing. Not only do these structures resemble those in the patent in suit, but the transfer of the claim to the patent in suit by the direction of the board of examiners naturally leads to the conclusion that the claim as there construed was especially applicable to the present patent. Furthermore, it seems to be agreed by both experts that the equalization of the suction at the mouth of the slot is principally regulated by the closeness of the contact of the lips of the slot to the carpet or other contact-surface, and that a large chamber is not necessary to prevent an inequality between the flow of air in the middle and at the extreme ends of the slot, except in cases where there is not a sealing-contact. A large suction-chamber would appear, therefore, to be unnecessary for the practical working of the vacuum cleaner, as well as not embodied in several of the complainant's devices shown in the patent drawings, or in certain of those in commerial use.

As for the width of the slot, it is true that Kenney in his arguments before the Patent Office recommended a slot not more than one-sixteenth, and in another place not more than one-eighth of an inch wide. No width of the slot, however, is prescribed either in the claim or the specification. It must be a "narrow inlet-slot." That it need be of no fixed width, however, is manifest from the specification which provides:

"By adjusting the front or toe section 25b of the bottom plate to or from the section 25a the slot may be narrowed or widened according to the work required."

The term "narrow inlet-slot" is one of degree, and while the complainant's cleaner in commercial use has a narrow slot not exceeding one-half inch, and the file wrapper indicates that he had a preference for a slot only one-sixteenth of an inch in width, yet the defendant's slot is, comparatively speaking, narrow. Defendant's cleaner "Liberty" has a slot of 1⅝ inches, and the "Magic" of three-fourths to seven-eighths of an inch. The complainant was the first to design a commercially successful vacuum cleaner and is entitled to have a broad interpretation given to the claims of the patent. The defendant has produced a device operating on a like principle, which removes less dirt from the carpet than complainant's device because it employs a lower vacuum. It employs this lower vacuum to prevent the larger slot from sticking to the door.

The contention of the defendant that the patent in suit calls for a device with protruding lips is wholly untenable, for the reason that the specification in discussing the hand implement says:

239 F.—35

"* * * The slot, where the shoe has a flat bottom of considerable extent, may be provided with projecting lips *24a*, *24b*, formed, respectively, on the bottom sections *25a*, *25b*."

Not only do the words of the specification make the use of protruding lips optional, but the drawings, figures 9 and 11, apparently indicate no such lips. The inventor undoubtedly contemplated a machine that made a close contact with the carpet. He says, on page 2, line 38, of the specification:

"The slot is restricted and narrow, and the bounding and defining lips thereof are so disposed that the outward mouth of the slot lies in what when the cleaner is in use constitutes the contact-surface of the implement, so that it will hug the surface to be cleaned."

This result is accomplished by both the complainant's and defendant's devices. While the cleaner of the defendant is elevated upon rollers, it still comes in close contact by the suction which brings the carpet up to the lips of the cleaner.

The Cummings patent, No. 460,935, the British patent to Howard and Taite, No. 10,271, of 1896, and the American patent to Thurman, No. 695,967, of March 25, 1902, are relied upon by the defendant to establish anticipation of Kenney's patent, or at least lack of invention on the part of Kenney.

The Cummings patent does not seem to have met with any commercial success, or to have been a practicable device. The son of Cummings testified that his cleaner was mounted upon a truck, and had a hood that was about 8 inches wide by 12 inches long. Indeed the original device was 12 by 14, and the narrower slot was the result of reduction after experiment. The inventor, of course, found that the cleaner stuck to the floor, and had the power reduced accordingly. He attempted to market this device for about 2½ years without success, although his financial resources seem to have been quite as great as Kenney's. Neither the specification, drawings, nor the history of the Cummings' device, as related by his son, indicate that he understood the vacuum cleaner process which Kenney first made practicable.

The patent to Howard and Taite calls for a suction chamber having a flattened, flaring front, on the lower side of which is an elongated narrow inlet aperture that may be of arc-shape. While the specification does not require an arc-shape apparatus, yet all the diagrams indicate that design, and there is no evidence that any other design was ever used, or that the device ever met with any commercial success. The examiners in chief allowed claim 4 in spite of this reference, and overruled the primary examiner, saying that "the curve on the end of the nozzle would render the device inoperative." (Record, p. 1003).

We do not find that Howard and Taite realized the value of a sealing contact between the cleaner and the carpet, which their device certainly did not show.

The Thurman patent is clearly not applicable. The specification describes a blast nozzle, and the inventor does not appear to have attempted to design a vacuum cleaner, or to have understood the process of vacuum cleaning.

[2] It is further contended by the defendant that the words "narrow inlet-slot" should either be confined to a very narrow slot of one-half

inch in width or under, or should be regarded as void for indefiniteness. It was said by this court in the recent case of Eibel Process Co. v. Remington-Martin Co., 234 Fed. 624, —— C. C. A. ——, where it had been urged in argument that such words as "substantial elevation," "high elevation," and "rapidly" rendered the claims void for indefiniteness and uncertainty:

"It is difficult to lay down a rule, and it is best to confine the test of indefiniteness to the facts of a particular case. Where, as here, the principle of operation is made clear, * * * and the worker in the art has no difficulty in following the directions, then a claim using the phraseology of claims 1, 2, and 3 will not be held invalid. Any other construction might readily result in depriving a meritorious invention of its commercial value."

The District Judge, upon the application for a preliminary injunction, said:

"Obviously, 'narrow' cannot be defined within exact mathematical limits. Kenney produced a vacuum as distinguished from an air current. The tool had a narrow inlet-slot and made a sealing-contact with the surface to be cleaned. The specification and the claims did not limit Kenney to exact mathematical dimensions, for to have done so would have rendered the patent useless, and would have amounted to an open invitation to avoid infringement by means of slight changes. Narrow, of course, does not mean as wide as the Atlantic, nor as restricted as the eye of a needle. It means the width relatively which, in conjunction with the other elements relied on produces the vacuum result, whereby the dirt is sucked up and not blown up as in the air-current principle; and, of course, the device must be operative because patents are not abstractions but real things."

The Cummings device, as originally made, had an opening 12 inches by 14. In other words, it was practically a square box. Kenney taught the art that such were not the proper proportions, and that the slot should be narrow as compared with its length. He showed this by drawings accompanying his application. Neither the drawings, the terms of the specification, nor any of the elements in the claim under consideration limited Kenney to a slot of any definite width. Notwithstanding this, his patent is not open to charges of indefiniteness, for he gave to the world the new idea of a narrow inlet-slot "with the outward mouth of the slot lying in the plane of this contact-surface," and illustrated it in such a way that any skilled mechanic could make a practically operative vacuum cleaner. If such a valuable invention is to be protected, variations in the width of the slot rendered operative by decreasing somewhat the vacuum should not be held to lie outside of the claims of the patent.

It was demonstrated at the trial that a vacuum properly localized at a narrow slot results in the most complete elimination of dirt and dust. The narrower the slot, the more completely this is done. The defendant's devices, having wider slots than the complainant's, do not remove dirt which is seated deeply in the fabric as well as do complainant's cleaners. Nevertheless, they operate in the same way. In view of the state of the art at the time Kenney applied for his patent, it can fairly be said that he taught it the value of a narrow slot which could be readily moved without sticking to the carpet, or causing abrasions of the carpet, and of a sealing-contact. The defendant's devices all do this. They can be prevented from sticking to the carpet by decreasing

the vacuum which complainant uses. This renders the device less efficient, but still efficient enough to remove considerable dirt. It operates in exactly the same way as complainant's, only less well.

The defendant says that complainant's patent belongs to one class of suction-cleaning machines, while the machines of defendant belong to another. He insists that there are two classes of sweepers, one in which several sweeping tools work upon a single pump, the other in which but one sweeping tool works from a sweeping pump, and, distinguishing the two systems, says that the high vacuum multiple system of Kenney requires the narrow slot in order that more than one tool may be used at the same time. This argument is not one which goes to the character of the invention, or the disclosure of the patent in suit. It is rather a comparison between the amount of vacuum required for a large multiple tool plant and that required for a hand device. Furthermore, Kenney's patent nowhere sets forth the amount of vacuum required, which is to be determined by experiment in each particular case. Complainant's patent discloses a mode of operation equally suited for both a large plant and a hand cleaner. It is possible that a wider slot may be more desirable for one purpose than for another, but that a comparatively narrow slot is practically requisite for each was taught by Kenney, and has been proved by experience.

We have not discussed the comparative merits of the vacuum theory as contrasted with the air-current theory, nor do we think it is from any point of view necessary. Complainant's expert, Prof. Reeve, convinced the District Judge that the vacuum principle was the true one, and appears to have demonstrated it by his experiments. Reeve said:

"Whichever be true, the fact remains that air currents are produced only by differences in air pressure, and air currents, as well as vacuum, can operate on the dirt in the carpet only at the lip of the sweeper, so that in either event, or in either aspect of the case, there must be concentration of vacuum at the lip, and the efficiency of the power transmission of the whole apparatus is measured by the proportion of the original vacuum available which is made effective at the lip of the nozzle." Record, p. 195.

Kenney, with little or no capital, invented a cleaner which has met with great success by reason of the novelty and intrinsic merits of the device. The hand implement under consideration is one of the forms of the Kenney invention. We think Kenney's contribution to the art of vacuum cleaning has been sufficiently fundamental to entitle his patent to a broad interpretation, and, when given such interpretation, there can be no doubt that the defendant's devices infringe.

The decree is affirmed.