### NATIONAL SWEEPER CO. v. BISSELL CARPET SWEEPER CO.

(District Court, S. D. New York.   March 20, 1917.)

PATENTS ⊙328—INVENTION—PNEUMATIC SWEEPER.
    The Baender patent, No. 1,138,437, for a pneumatic sweeper *held* void for lack of invention in view of the prior art.

In Equity.   Suit by the National Sweeper Company against the Bissell Carpet Sweeper Company for infringement of letters patent No. 1,138,437, for a pneumatic sweeper, issued to Baender May 4, 1915.   On final hearing.   Decree for defendant.

C. L. Sturtevant, of Washington, D. C., L. W. Southgate, of Worcester, Mass., and L. S. Bacon, of Washington, D. C., for plaintiff.

Drury W. Cooper, of New York City, and Fred L. Chappell, of Kalamazoo, Mich., for defendant.

MAYER, District Judge.   "This invention" Baender states, "relates to a carpet sweeping appliance operating by atmospheric pressure to draw in and gather the dust and 'sweepings' from a carpet while the appliance is moved over its surface.   The carpet sweeper of my invention operates on the principle of producing a continuous suction or exhaustion of. the air in a closed receptacle sufficiently below the normal pressure of the atmosphere to induce an inflow of air through a slit or nozzle, and thereby draw the dust and sweepings into the receptacle as the appliance is moved over the carpet.   The invention embraces the novel construction and combination of a dust receptacle on wheels, suction bellows, and means for operating the bellows in such manner as to produce and maintain a continuous suction at the inlet slit in the receptacle as the same is moved over the surface of the carpet."

Claim 2 is for:

"2. The combination, in a pneumatic cleaner having traction wheels supporting the rear thereof, of a dust receptacle removable from the cleaner and having a horizontal screen device in its upper portion, a suction nozzle supporting the front end of the receptacle, the exit from the nozzle entering the receptacle below the screen device, a suction device above the receptacle, and connecting devices between the wheels and the suction device for operating the latter."

Claim 4 reads:

"4. In a sweeping appliance, the combination of a dust receptacle, a nozzle communicating therewith and supporting the front end thereof, a suction device over said receptacle and communicating therewith, screening means located between the nozzle and suction device, wheels forming the rear support of said appliance, and operative connections between the wheels and the suction device adapted to operate said device upon the rotation of the wheels."

Concededly every element is old, and, to support the combination, it is urged that invention was required to utilize the so-called "1–2–3 arrangement" in a hand-propelled sweeper, and to so dispose the suction nozzle that it always acts as a support for the front end of the device when in operation on a carpet to be cleaned. The "1–2–3 arrangement" is a brief phrase coined by counsel, and means, in this case, that the flow of the air through the apparatus will be (1) through the suction nozzle, (2) through the screen device, and (3) in and out of the suction device. But that arrangement was old in the art, as witness (a) Fig. 9 of J. J. Harvey's American patent, No. 577,854, dated March 2, 1897, Harvey's English patent being dated January 10, 1893; (b) C. J. Harvey's patent, No. 673,603, dated July 11, 1899; and (c) Kenney's patent, No. 847,947, dated March 19, 1907. Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 227 Fed. 998, 1004. Something might be said about Anders (British) No. 28,087 of 1906–1908, and Dudley's Exhibit D might be discussed with some particularity; but, as "enough is as good as a feast," further elaboration is unnecessary.

Notwithstanding these prior art references, it is urged that, because they were not utilized in a commercially successful compact hand-operated sweeper, Baender somehow evidenced inventive genius. The history of the art as developed in the Vacuum Cleaner Co. Case, supra, in Vacuum Cleaner Co. v. Innovation Electric Co. (D. C.) 234 Fed. 942, affirmed 239 Fed. 543, —— C. C. A. ——, and in this and the two companion cases at bar, shows that the art of cleaning by suction or vacuum devices never attained substantial utility until after Kenney's invention, and, for that reason, that the old-fashioned and (for its purposes) efficient Bissell carpet sweeper, with its commercial success of over 30 years, was good enough for day by day domestic needs.

Undoubtedly the Kenney invention gave an impetus to the art, and, presumably, it occurred to Baender, just as it did to Dudley, and later to Sturgeon and Quist, that a cheap hand-propelled device, small and compact, which utilized the suction idea (not now referring to suction or vacuum technically), would go a step further and supply a want that the Bissell carpet sweeper had not filled and that the Kenney patent had created.

The advantage, already old, of having the separator or dustbag as No. 2 in the "1–2–3 arrangement" had been made especially clear in its then most advanced form by the Kenney patent and to an experimenter skilled in the art, the obvious first step was to see what could be done with the "1–2–3 arrangement" in a compact hand-propelled machine. Indeed, the tortuous history of this patent, illuminated by a

file wrapper as voluminous as might be expected of the most complicated device in the mechanical or electrical arts, demonstrates that the "1–2–3 arrangement" was not, as indeed it could not be, the gist of the so-called invention, but that the emphasis was on the distribution of the load.   The far from vigorous conclusion of the board of examiners in chief on an insufficient record was as follows:

"In all of these claims there is defined a special arrangement of the dust box and the suction device, as well as of the supporting and driving wheel and the suction nozzle; the suction device being disposed above the dust box and the suction nozzle being at one end, while the driving wheel (or wheels) is situated at the other end.   This arrangement of the parts is compact, and therefore advantageous, and, furthermore, is such as to provide for a distribution of the load between the wheel and the suction nozzle.   It required some ingenuity to devise the above-described arrangement of the parts, although it is true that they individually operate in about the same way as the corresponding elements found in the cited patents.   The device as covered by the first five claims is new and useful and therefore patentable."

Of course, any one who knew the many devices of the prior art would know that the dirt should be sucked up or blown in at the front end of the device, and any one who knew only the Bissell carpet sweeper (not to speak of other prior art) would know that the proper location of wheels would facilitate the movement of the machine, and the only problem, if such it may be called, was of the simplest mechanical kind; i. e., to distribute the load between the wheels and the suction nozzle.   This Baender accomplished operatively in the patent sense, but most ineffectively, by producing a device which worked only one way and with enough noise to destroy the nerves of even a placid housewife.

If it be assumed that Baender, if called, could show that he had sold 2,000 machines, it does not take the foresight of a prophet to predict that the Baender device in the form of the teaching of his patent would have been short-lived.   From the foregoing it will be seen that discussion of infringement, about which so much was argued, becomes unnecessary, and that further testimony as to the controverted Dudley Exhibit (which, if in the prior art, obviously disposes of Baender) need not be taken.

For want of invention, the patent is void, and the bill is dismissed, with costs.   Submit decree on five days' notice.