VACUUM CLEANER CO. v. THOMPSON MFG. CO.

(District Court, S. D. Iowa, C. D. April 15, 1919.)

1. COURTS ⬥96(1)—FEDERAL COURTS—RULINGS OF CIRCUIT COURT OF APPEALS —PRECEDENCE.

A federal District Court will follow the ruling of the Circuit Court of Appeals of another circuit, where the matter has not already been before the Circuit Court of Appeals of the circuit in which the trial court is sitting.

2. PATENTS ⬥69—PRIOR ART—DISCLOSURES—SUFFICIENCY.

In patent cases, any printing, writing, or illustration, relied on as part of the prior art, must be such as to make disclosure, not to an inventor, but to the ordinary individual skilled as a workman in the field involved; they must teach the art, and must be such that qualified persons, without the exercise of inventive genius, may produce the device from the disclosures.

3. PATENTS ⬥328—PRIOR ART—VACUUM CLEANER.

The Kenney patent, No. 847,947, for a vacuum cleaner, *held* not anticipated by prior art.

In Equity. Suit by the Vacuum Cleaner Company against the Thompson Manufacturing Company. Decree for plaintiff.

Charles Neave and William G. McKnight, both of New York City, and James C. Hume, of Des Moines, Iowa, for plaintiff.

Ralph G. Orwig, of Des Moines, Iowa, for defendant.

WADE, District Judge. Counsel for defendant state the issue herein thus:

"Does the prior art disclose a so-called suction or vacuum having an inlet head characterized by a narrow inlet slot, so arranged that its boundaries are adapted to be brought into sealing contact with the surface to be cleaned?"

Answering this question in the affirmative, counsel rely principally upon three patents: McGaffey, Howard & Taite, and Westman.

[1] This case might well be disposed of upon the following adjudications: Vacuum Cleaner Co. v. American Rotary Valve Co., 227 Fed. 998; Vacuum Cleaner Co. v. Innovation Electric Co., 234 Fed. 942; Vacuum Cleaner Co. v. Innovation Electric Co., 239 Fed. 543, 152 C. C. A. 421; Vacuum Cleaner Co. v. Bissell Carpet Sweeper Co., 242 Fed. 649. Not that any of these cases constitute an adjudication as against this defendant, but as a rule a District Court will follow the ruling of the Circuit Court of Appeals of another circuit, where the matter has not already been before the Circuit Court of Appeals of the circuit in which the trial court is sitting.

Counsel recognize this rule, and ask the court to decide contrary to the above cases, upon the contention that in those cases the evidence now before this court was not presented, and that in those cases the courts were mistaken as to the facts of the prior art. Three of these cases were tried before Judge Mayer, whose ability and capacity for painstaking investigation will be conceded. The other case was before the Circuit Court of Appeals on appeal from the decision of Judge Mayer.

No one can read the opinions in these cases and not realize that the questions involved were given most careful consideration, and that the facts were presented most thoroughly—most minutely. As to the McGaffey disclosure, it appears that, in the first case tried, the original model from the Patent Office was before the court. In this case the McGaffey, Howard & Taite, and Westman disclosures, were all thoroughly and carefully reviewed.

In the Innovation Case, 234 Fed. 942, supra, Judge Mayer says:

"In view of the exhaustive and able manner in which the case was presented by counsel, I have again studied the history of the art and followed in minute detail defendant's elaborate analysis of the file wrappers."

In this case it appears that the experts had conducted "numerous demonstrations" at Columbia University, and at a shop known as Boucher's. It is shown that these demonstrations were in the presence of Judge Mayer. The opinion of Judge Hand for the Circuit Court of Appeals shows careful and earnest consideration of the points made in this case. Judge Mayer again in the Bissell Case, 242 Fed. 649, supra, reviews the prior art, including the McGaffey and Howard & Taite patents, and others. It does not seem possible that in these various cases the truth as to the prior art was not fully before the courts.

Counsel place much reliance upon an enlargement of the drawing presented to the Patent Office with the McGaffey application, and it is said:

"Hence no court that has heretofore passed on this question has ever had before it a copy of McGaffey's original drawing; nor has any court ever had before it a copy of the McGaffey drawing on an enlarged scale, like the Exhibit No. 7. Furthermore, no court has ever had before it a sample illustrating McGaffey's Patent Office drawing like Exhibit No. 6; but apparently all of the courts that have passed on this matter have had before them only the reduced reproductions of McGaffey's drawings, which are too small to be understood, and the McGaffey model. In view of this fact, the courts have been led into very serious errors in regard to McGaffey's disclosure."

Now, it must be borne in mind that the defense here is that of prior disclosure made in the application for patents, and in the patents granted. It must be conceded that, not only is the language of the patent to be considered in this defense, but also the drawings and illustrations.

[2] But the distinction between a patent relied upon as a patent by a person asserting a right thereunder, and relied upon as showing the state of the art, must be apparent. Any printing, writing, or illustration relied upon as part of the prior art must be such as to make disclosure, not to an inventor, but to the ordinary individual, skilled as a workman in the field involved. The documents relied upon must teach the art; must be such that the world has knowledge of the art; must be such that qualified persons, without the exercise of inventive genius, may produce the device from the disclosures. Of course, it is not necessary that the device involved shall be shown by any one publication; but the inventor, relying upon his patent, is presumed to have had before him all of the prior printed disclosures.

Now, it does not seem possible that through all of the foregoing litigation, with experts before the court, and a court expert in itself, the particular elements relied upon by counsel were overlooked. Certainly it cannot be assumed, if they were overlooked, that they were sufficiently disclosed, so as to teach the art to the ordinary skilled workman. If all these experts, earnestly interested in the questions presented in the case, and if the courts, seriously endeavoring to find out what was disclosed, could not find the disclosure contended for by counsel, then there was no disclosure defeating the Kenney patent.

Referring to enlarged drawings and present models, we must not overlook the fact that it is comparatively easy matter, in the light of new invention, to construct a drawing or model of a device with functions which the original inventor never dreamed of; especially is this true where the point involved may be so refined that, as in the Bissell Case, an attempt was made to evade the Kenney patent by having the cleaning tool adjusted so that the slot would be at the ends $^{20}/_{1000}$ of an inch above the surface and in the middle $^{45}/_{1000}$ of an inch.

To ascertain the truth as to what was invented and disclosed, I feel that any court would rather rely upon the model made by the inventor, and filed in the Patent Office, as Judge Mayer did in the McGaffey disclosure, than it would upon the drawing of a patent attorney. I think the record justifies the statement of Judge Mayer in the American Rotary Case, 227 Fed. 998, supra:

"In other words, Howard & Taite failed to realize the theory of close contact and the production of a vacuum, instead of an air current."

The Circuit Court of Appeals says:

"We do not find that Howard & Taite realized the value of the sealing contact between the cleaner and the carpet, which their device certainly did not show."

In the Bissell Case, Judge Mayer says:

"We may at once put out of view models such as those of McGaffey and Hall, because the forward lip is well above the surface, and the theory of these devices negative contact, and was in direct contradiction to Kenney's teaching. The Howard & Taite patent, with its arc-like shape, likewise clearly negatives contact."

A careful study of these prior patents justifies the statement of Judge Mayer that:

"Kenney, by accident or design, was fortunate enough to frame a claim which had to do solely with the cleaning tool, and the claim must be construed as having been framed in contemplation of the possibility that some one thereafter might be able to devise an instrumentality which would avoid claims 1, 2, and 3, and yet employ an operative cleaning tool, which would not stick, but would so contact as to localize at a narrow slot such vacuum as might be created; and this is what sealing contact means."

Counsel earnestly urge that the Westman patent disclosed a narrow slot; let it be granted, but, if so, it is apparent that the width of the slot had no significance to the inventor. It was purely "accidental." It had no functions, so far as the inventor knew. To the world what

was disclosed was a slot; whether it would be narrow or wide was not disclosed. Kenney was the first to disclose the narrow slot, and that this description is sufficiently definite is decided in the foregoing cases.

"Prior patents are part of the prior art only by what they disclose on their face. [Citing cases.] We are satisfied that Swain's air inlets did not have the effect of Frey's nonreturn valve referred to." Frey v. Marvel Co., 236 Fed. 916, 150 C. C. A. 178.

"The fact that the air as used in the Sparrow process may, or must, have had the same effect as in the Byerley process, is far from conclusive of anticipation, for it is settled law that novelty is not negatived by a prior accidental production of the same thing, when the operator does not recognize the means by which the result is accomplished, and no knowledge of it, or of the methods of its employment, is derived from it by any one. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co. (C. C.) 55 Fed. 307 (in which case, see Judge Taft's statement of this principle); Chase v. Fillebrown (C. C.) 58 Fed. 377; Wickelman v. A. B. Dick Co., 88 Fed. 266, 31 C. C. A. 530; Tilghman v. Proctor, 102 U. S. 711, 26 L. Ed. 279." Byerley v. Barber Asphalt Co. (D. C.) 230 Fed. 995.

"The case falls rather within the rule that prior accidental production of the same thing, when the character and function were not recognized until the invention of the later patent, does not effect anticipation. Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279. Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825, 36 L. Ed. 658; Wickelman v. Dick (C. C. A. 2d Cir.) 88 Fed. 264, 266, 31 C. C. A. 530; Canda v. Michigan Iron Co. (C. C. A. 6th Cir.) 124 Fed. 486, 492, 61 C. C. A. 194. And that anticipation is not disclosed by a drawing which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention and was not designed, adapted, and used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second inventor. Brill v. Third Ave. Railroad Co. (C. C.) 103 Fed. 289; Gray Telephone Co. v. Baird Co. (C. C. A. 7th Cir.) 174 Fed. 417, 421, 98 C. C. A. 353. We think the defense of anticipation is not made out." Munising Paper Co. v. American Sulphite Co., 228 Fed. 700, 143 C. C. A. 222.

[3] Whatever there may be in the patents relied upon which in form may in a manner conform to the Kenney patent was without knowledge or disclosure of functional value, and no skilled workman without the exercise of inventive faculty, could take all of these patents, and intelligently produce a device, accomplishing the work for which the Kenney invention was devised.

There will be a decree for the plaintiff. Counsel for plaintiff will prepare decree, and submit it to counsel for defendant, who will have five days in which to file objections thereto.