### IOWA WASHING MACH. CO. v. MONTGOMERY WARD & CO.

#### (District Court, S. D. New York. November 18, 1915.)

1. PATENTS ⬥328—VALIDITY AND INFRINGEMENT—REISSUE—WASHING MACHINE.

   The Stocking and Mendenhall reissue patent, No. 12,733, for a washing machine, was not anticipated, discloses patentable novelty and invention, and the reissue was properly granted, because through inadvertence or mistake the original patent was inoperative to secure to the patentees the protection to which their invention entitled them; also *held* infringed.

2. PATENTS ⬥136—REISSUES—GROUNDS OF REISSUE.

   Rev. St. § 4916 (Comp. St. 1913, § 9461), which authorizes a reissue of a patent when by reason of inadvertence, accident, or mistake the original is inoperative or invalid, does not mean that the patent as such·must be inoperative or invalid, but that it is inoperative or invalid to secure the enjoyment of ·the invention which within its four corners it fairly discloses.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 201–203; Dec. Dig. ⬥136.]

3. COURTS ⬥350—EQUITY CAUSES—EFFECT OF RULE.

   Equity rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi), authorizing the granting of leave to take depositions, and fixing the time within which they may be taken, was not intended to vary or be a limitation upon Rev. St. § 863 (Comp. St. 1913, § 1472), which gives the right to take depositions de bene esse in certain cases, in any civil cause.

   [Ed. Note.—For other cases, see ·Courts,. Cent. Dig. § 923; Dec. Dig. ⬥350.]

In Equity. Suit by the Iowa Washing Machine Company against Montgomery Ward & Co. for infringement of reissue letters patent No. 12,733, for a washing machine, granted to Bert A. Stocking and Hiram Mendenhall. On final hearing. Decree for complainant.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert H. Parkinson and Wallace R. Lane, both of Chicago, Ill., for plaintiff.

Taylor E. Brown, of Chicago, Ill., and Ralph L. Scott, of New York City, for defendant.

MAYER, District Judge.   There is a touch of business romance in this suit concerning a washing machine, and an illustration of the opportunities always open to ingenious men to make contributions to the general good and to gather in a just reward for their efforts.   These patentees were men of limited attainments, who appreciated the desirability of producing, if possible, a washing machine arrangement which would be a substantial saver of labor, would be fairly simple in construction, and exceedingly simple in operation.

The prior art had developed a large variety of machines, which were objectionable mainly because of the wearing labor of operating them, and, in some instances, because the mechanism was so situated as to constitute a potential danger to the children of the modest household, who are so frequently about where these machines are likely to be. The patentees took perfectly well-known elements, and so arranged and combined them that they attained a result whereby women, and even children, possessing little strength, could with one hand easily and effectively do the washing contemplated.   The combination was new, as a mere inspection of the patent and the device under consideration will demonstrate, when compared with the prior art.

It is frankly admitted by the expert for the defendant that the prior art does not show any construction containing all of the elements in the combination of the patent, and not a single prior art construction or device even approaches in arrangement the patent and the commercial device manufactured thereunder.   The nearest approach to the patent in suit (and that is a good way off) is the Madison patent, and a mere inspection of that patent disposes of it either as an anticipation or as a negation of invention.

The trial of this suit is a useful example of trials in open court in cases involving easily understood mechanical constructions of the kind here involved.   What the prior art amounts to is a demonstration of the ability of these patentees, because the very omission in the prior art of some of the elements and the different arrangement of the elements make clear that prior inventors were groping about, without success, to produce a machine which would dominate a comprehensive and fertile market.

It is not important to determine what percentage of all of the washing machines sold throughout the country is represented by the sale of the washing machines made under the patent in suit.   It is enough to say that the sale of the device of the patent represents several millions of dollars at the price to dealers, and more still, of course, at the price to the buying public.   This unquestioned commercial utility is important only as helping to resolve a doubt as to patentable novelty, if such existed, and, as I have indicated, I think there can be no doubt as to the validity of the patent from the standpoint of invention.

The value of the patent, to make a trite observation, is best demonstrated by the substantial copy of its construction exemplified in defendant's machine. Of course, there are some differences between defendant's machine and plaintiff's patent; but these differences are of no consequence, and are useful only as a talking point in a lawsuit. The real question in the case is whether the reissue patent is valid.

[1] The original patent and the reissue patent are for the same construction. In the reissue patent the claims are made broader by the elimination of certain unnecessary details set forth in the single claim of the original patent.  The original patent is a fine example of incompetent soliciting. The claim reads as follows:

"In a washing machine, the combination of the following instrumentalities, to wit: A top-provided tub, a hinged door secured to said top, a main bracket secured vertically to said tub, a half ·ring extending from the lower end of said bracket, a hand lever pivotally secured to said half ring, a pin projecting from said hand lever, a rock bar also pivotally secured to said half ring, provided above with a slot within which is held said pin, a pitman extending from the lower end of said rock bar, a vertical shaft secured pendent, from the bottom of said tub, a· bevel gear secured to said shaft, a horizontal stub shaft suitably secured below the bottom of said tub, a bevel gear secured to said horizontal shaft meshing with said first-mentioned bevel gear, said pitman being pivotally secured to said bevel gear mounted upon said horizontal shaft, a bracket secured to said lid, a shaft projecting through said bracket and lid into said tub, a rack wheel secured to said last-mentioned shaft, an agitator head secured to said last-mentioned shaft, a pitman pivotally secured to said hand lever, and a rock bar meshing with said rack wheel, and adapted to be detachably secured to said last-mentioned pitman."

It is obvious that this claim enumerated many unnecessary and useless details, and constituted an invitation to infringers to avoid the real intent of the patentees and to encroach upon the field which the patentees had every reason to believe they had secured for themselves. With a promptness that is greater than we ordinarily find in reissue cases, the patentees, after they obtained proper advice, applied for a reissue. With a brevity as commendable as it is surprising, the new solicitor placed the subject-matter clearly and simply before the Patent Office in an affidavit made by the patentees, in which they pointed out a typographical error (of no importance in view of the context of the original patent), and stated that they "were led to believe that the claim was broad enough in scope to cover the novel features of their invention." What they represented to the Patent Office was literally true. They had the same invention and, in substance, they claimed no more than they did before, but technically their claims were broader because by the omission of useless details they barred the way against intending infringers.

The new claims here in issue are as follows:

"3. The combination of a washing machine body, an agitator mounted in the top thereof, a balance wheel beneath the bottom thereof, a reciprocating lever, means connected with the lever for imparting an alternating rotary motion to the agitator and means connected with the lever for imparting a continuous rotary motion to the balance wheel, said means including a speed increasing gearing device.

"4. A washing machine body, an agitator mounted in its top, a balance wheel under the body and an operating device passed around the side of the

body and connecting the agitator and balance wheel and capable of operating both, said operating device including a speed increasing gearing for the balance wheel.

"7. The combination with a washing machine body, an agitator, a balance wheel, a small gear wheel connected with the balance wheel, a large gear wheel in mesh with the small one, an operating device, means connected with the operating device for imparting an alternating rotary motion to the agitator, a pitman connected to the operating device for driving the large gear wheel, supporting legs for the body, a bar beneath the body, said bar forming a support for the balance wheel and said legs serving to protect the balance wheel and gear wheels."

Nobody was hurt, there were no intervening rights, and the reissue was not an attempt to incorporate after-acquired knowledge, but was simply an effort to express in technically correct phraseology what had been botched by the first solicitor.

So much has been written as to reissues that an elaborate review of the authorities collated and commented upon by respective counsel seems unnecessary. The fundamental test in considering the reissue statute is good faith. Somehow the courts are usually able to see through a situation, and to realize whether the reissue has been applied for and obtained in good faith, for the purpose of curing inadvertence or mistake, or whether the reissue merely represents an attempt to corral the art in essential particulars, which the inventor never disclosed and probably knew nothing about.

[2] It is quite clear that, through error which has arisen by inadvertence or mistake and without any fraudulent or deceptive intention, the original patent was inoperative for the purposes intended, as is required by section 4916, Rev. St. I think that the statute does not mean that the patent as such must be inoperative or invalid, but does mean that the patent is inoperative or invalid to secure the enjoyment of the invention which the patent within its four corners fairly discloses. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Autopiano Co. v. American Player Action Co., 222 Fed. 276, —— C. C. A. ——; Baldwin v. Abercrombie Fitch Co., 227 Fed. 455, affirmed 228 Fed. 895.

Within the principles stated in these cases (and others which could be cited), the facts in the suit at bar sustain the reissue. And thus, if I am right, the romance ends with the success of the original patentees in securing and retaining for themselves the fruits of their ability, instead of being compelled to look on as regretful spectators while others enjoy what is justly theirs.

[3] Finally, I am asked to pass upon a question of practice in respect of which it is said the members of the bar are somewhat in doubt. The defendant objected to the admission in evidence of certain depositions taken by plaintiff without first obtaining leave of court. These depositions were taken under section 863, R. S. U. S. and apparently within the time provided by equity rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi), but without an order of court. I am of opinion that equity rule 47 was not intended to vary or be a limitation upon section 863, because, of course, that section, being a legislative enactment, cannot be changed except by further legislative enactment.

I have conferred with my associates, Judges HOUGH, LEARNED HAND, and AUGUSTUS N. HAND, and they authorize me to state that they concur in this view.

For the reasons above outlined, the plaintiff may have the usual decree, with costs, and the decree will be settled on five days' notice.