IOWA WASHING MACH. CO. v. MONTGOMERY WARD & CO., Inc.

(Circuit Court of Appeals, Second Circuit.   April 11, 1916.)

No. 252.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—WASHING MACHINE.

The Stocking and Mendenhall reissue patent, No. 12,733 (original No. 762,851), for a washing machine, is valid, and covers an invention of great utility and efficiency; also *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Iowa Washing Machine Company against Montgomery Ward & Co., Incorporated.   Decree for complainant, and defendant appeals.   Affirmed.

For opinion below, see 227 Fed. 1004.

The decree of the District Court held valid reissued letters patent No. 12,733 granted to Stocking and Mendenhall, December, 1907, for a washing machine and that claims 3, 4, and 7 of said patent are infringed by the defendant's machine, as exemplified by complainant's Exhibit No. 7, sold by the defendant in the state of New York.

Ralph L. Scott and C. A. L. Massie, both of New York City, and Taylor E. Brown and Clarence E. Mehlhope, both of Chicago, Ill., for appellant.

Robert H. Parkinson and Wallace R. Lane, both of Chicago, Ill., for appellee.

Before COXE and ROGERS, Circuit Judges, and HOUGH, District Judge.

COXE, Circuit Judge.   That the patentees have invented a washing machine which is a manifest improvement over anything which preceded it in the art is too obvious for discusson.   Very soon after the original patent was issued it became apparent that its single claim, which contained 20 separate elements, was absolutely valueless as a protection against infringers.   Any one who had wit enough to omit one of these elements could infringe the claim with impunity.   The patentees soon became aware of the fact that though they had made an invention of unusual merit, by solving the problem of a cheap and efficient washing machine, their patent offered them no protection whatever.   Their only remedy was by reissue and that they were diligent in its prosecution is shown by the fact that the original was dated June 14, 1904, and the application for the reissue was filed February 14, 1905, eight months thereafter.

That the patentees made a most valuable contribution to the art is manifest; that the claim afforded them no protection is also manifest. The omission of one useless element avoided infringement.   Prior to the passage of the statute regulating reissues, the Supreme Court, speaking through Chief Justice Marshall, said in the case of Grant v. Raymond, 6 Pet. 218, at page 243, 8 L. Ed. 376:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The communication of the discovery to the public has been made in pursuance of law, with the intent to exercise a privilege which is the consideration paid by the public for the future use of the machine. If, by an innocent mistake the instrument introduced to secure this privilege fails in its object, the public ought not to avail itself of this mistake, and to appropriate the discovery, without paying the stipulated consideration. The attempt would be disreputable in an individual, and a court of equity might interpose to restrain him."

From that time to the present it has been the purpose not only of the courts, but of Congress as well, to protect an honest inventor who, through no fault of his, is deprived of the fruits of his invention. There is, in our opinion, no doubt as to the utility and efficiency of the invention. Any one who has seen it in operation as compared with the prior art machines must be convinced of this proposition. Some of its advantages are pointed out in the appellee's brief as follows:

"Continuous oscillation of the agitator can be effected by either pushing or pulling the hand lever in one direction only. It is unnecessary to bend over the tub when operating it, or bend at all, as in turning a crank, and the gears and other rotating mechanism, instead of inducing a tendency to capsize, as they would if mounted on the side of the tub, give increased stability and insure against any such tendency. Instead of exposing to injury the fingers and clothing of the operator or others (a very substantial peril if rotating gear were operated on the side of the tub by persons unaccustomed to machinery), they are completely housed and sheltered by their positions under the tub, within the circuit of the tub legs, where they neither threaten nor incur harm."

We have then, first, a meritorious invention which has proved to be popular and remunerative; second, a patent which, through inadvertence, accident or mistake, and probably through all these conditions combined, is rendered utterly worthless as a protection; third, an infringer who is making large gains out of sales of the patented device. In such circumstances the effort of the court should be to brush aside technicalities and give the inventors the full fruits of their invention.

We are unable to find that any rights were acquired by the defendant because of the inoperative claim of the original patent. Its act was an open appropriation of the complainant's property when the expiration of prior patents enabled it to use the machines of those patents legally if it had desired to do so. Instead of using the prior art machines it copied all the valuable features of the patent in suit. The defendant acquired no rights based upon the original patent. It began its infringement after the reissue and cannot successfully contend that it invested its money relying upon the invalidity of the patent, or the insufficiency of the claim properly to protect the invention. It entered the field deliberately and with full knowledge of all the facts.

We think the decree is correct and should be affirmed.