DOMESTIC VACUUM CLEANER CO. v. BISSELL CARPET SWEEPER CO.

(District Court, S. D. New York.   March 20, 1917.)

1. PATENTS ⬦328—VALIDITY AND INFRINGEMENT—VACUUM SWEEPER.

The Quist and Blanch reissue patent, No. 13,508 (original No. 976,494), for a hand-operated vacuum sweeper, one feature of which is the means of attachment of the dust receptacle, so that it is readily removable for employing and readily reattached by an unskilled operator, was not anticipated and discloses patentable invention; also *held* infringed by a sweeper in which the nozzle head and dust receptacle are in one piece, instead of separable, as in the patented device.

2. PATENTS ⬦157(2)—CONSTRUCTIONS—VALIDITY.

Courts will not permit mere literalism to defeat a meritorious patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 231.]

In Equity.   Suit by the Domestic Vacuum Cleaner Company against the Bissell Carpet Sweeper Company for infringement of claim 4 of reissued letters patent No. 13,508, for a vacuum sweeper, granted to Quist and Blanch January 7, 1913.   On final hearing.   Decree for complainant.

L. W. Southgate, of Worcester, Mass., and C. L. Sturtevant and L. S. Bacon, both of Washington, D. C., for plaintiff.

Drury W. Cooper, of New York City, and Fred L. Chappell, of Kalamazoo, Mich., for defendant.

MAYER, District Judge.   The reissue was applied for only five months after the original patent was issued under circumstances which bring it well within the doctrine of cases in this circuit.   Autopiano Co. v. Amercan Player Action Co., 222 Fed. 276, 138 C. C. A. 38; Baldwin v. Abercrombie & Fitch Co. (D. C.) 227 Fed. 455, aff'd 228 Fed. 895, 145 C. C. A. 293; Iowa Washing Machine Co. v. Montgomery Ward & Co. (D. C.) 227 Fed. 1004; aff'd 234 Fed. 88, 148 C. C. A. 104; Motion Picture Patents Co. v. Laemmle et al. (D. C.) 214 Fed. 787.

[1]   The invention concerns a hand-operated carpet sweeper, and the patentees state:

"Further objects thereof are to provide a compact arrangement of the motors, wheels, and dust receiver, whereby they can be contained in a small space and covered by a small and neat casing having no projections liable to injure furniture when in operation; to provide an improved location and arrangement of motors whereby the suction will be continuous; and to provide a convenient way of removably holding the dust bag in position."

Utilizing the so-called "1–2–3 arrangement" of the prior art (see opinion in National Sweeper Co. v. Bissell Carpet Sweeper Co., 242 Fed. 947, decided herewith), Quist and Blanch arranged the parts of their pneumatic carpet cleaner, so that the dust receptacle could easily be removed by the housewife or domestic servant for the purpose of emptying the contents, and then put back and locked in position, so as to obtain the necessarily tight seal.

A mere inspection of the commercial device will demonstrate its admirable simplicity and usefulness.   This Quist and Blanch patent

is the second chapter of note in the story of this art of dust and dirt, of which Kenney's was the first. A young doctor of Worcester, Mass., interested in the pursuit of bacteria, conceived this invention and with the aid of Blanch gave it practical form. These patentees realized the necessity of making simple and easy the handling of the dust bag and the disposal of its contents.

These are compact hand-propelled devices. They must be sold at a price well below that brought by the more elaborate cleaners in which electric power is used, such as were under consideration in the Innovation Electric Co. Case (D. C.) 234 Fed. 942. They necessarily either came into competition with or were adjunctive to the Bissell sweeper, which had become almost a household word. Beginning in 1910, the Quist and Blanch was placed on the market, and, from the outset, sold itself. The business grew by leaps and bounds, until now fully 400,000 of these sweepers have been sold by those who control this patent. The M. S. Wright Company and the National Sweeper Company admittedly copied the Quist and Blanch construction, and, cross-licenses having been given around the circle by the plaintiff company and these other two, in a comparatively few years the three companies have sold over 1,000,000 sweepers containing the Quist and Blanch improvement at an aggregate price of several millions of dollars. Such a result indicates a remarkable commercial achievement, not lessened by the fact that the Bissell sweeper is still in large demand. If, notwithstanding the success which so well-known an article as the Bissell sweeper, backed by a business institution long established and of high repute, continues to retain, a new device so rapidly and extensively impresses the market, it is obvious that it possesses singular merit. Of course, it is not possible accurately to apportion how much of this success is due to Quist and Blanch alone; but it is at least certain that their feature contributed a fair share to the result in a very practical art, where the purchaser who desires to spend only $5 to $10 wants something that will suit the purpose and do the thing. It is manifestly important that, after the dust and dirt are collected, the disposal shall be as easy and as sanitary as practicable, and, undoubtedly, this characteristic has been a convincing selling point.

Defendant determined to undertake the manufacture of its two alleged infringing devices in December, 1913, and thereafter, with full knowledge of the Domestic and National machines, defendant began the development in its factory of these two sweepers, until in November or December, 1914, it placed them on the market. The reason why this step was taken is stated by Mr. Shanahan, defendant's general manager, as follows:

"Well, it is evident that with the development of the vacuum cleaner that a demand was created for it. Our customers, and we have a great many, were urging us to make a vacuum sweeper. We always hesitated about that, because we wanted to remain in the distinct carpet sweeper business. But our customers urged it so strenuously that we finally concluded that it was the business-like thing to do, to get into the vacuum cleaning business. We had been in the carpet cleaning device business for a great many years. The trade generally looked to us, I think, and we can say that, without any sug-

gestion of conceit in the matter, they looked to us for the development of a vacuum sweeper that would be in every way efficient. We had hundreds of such letters urging us, hoping that we would go into the business, until finally we did go into it."

Undoubtedly, defendant has honestly endeavored to avoid the patent, and to find its justification in the prior art and in the history of the patent itself. We shall see whether it has succeeded. Claim 4 in issue reads:

"4. A pneumatic cleaner, comprising a casing opening at its front end, a dust receptacle in said casing detachably connected therewith, a nozzle head detachably connected with said casing and covering the open front end thereof and the open end of said dust receptacle to hold the dust receptacle in position, said nozzle being provided with an opening therethrough connecting with said dust receptacle, a suction creating device connected with said casing, and sustaining wheels connected with said casing and operatively connected with and operating said suction device by the backward and forward travel over any surface."

As to patentability, I do not entertain any doubt. This is one of those simple arrangements which looks easy after it has been done, but nowhere in the prior art can a patent or structure be found which will read on claim 4, supra, and some of the patents, such as Conover, No. 847,278, show how not to do what Quist and Blanch accomplished. A detailed discussion on this branch is unnecessary, for mere inspection of the various models will at once demonstrate that workers in the prior art either did not think of this feature in combination or did not know how to attain it.

The important question is that of infringement. On this branch defendant insists that the file wrapper history requires that the claim shall be so strictly limited that it cannot apply to defendant's device, and also that the prior art demands a similar limitation. Defendant's structure follows Quist and Blanch, with the modification that the nozzle head and the dust receptacle (the upper plane surface of which forms the horizontal screen) are in one piece, and the closed back of the dust receptacle can be opened by a clasp, when the contents are to be emptied. Of course, in a one-piece structure, the bag being closed at the rear, the clasp for opening and closing is an obvious expedient.

This narrows the controversy to a single point; i. e., is infringement escaped by making the nozzle head and dust receptacle in one integral piece, instead of in two pieces? Counsel for defendant have painstakingly analyzed the claims of the original and reissued patents, the amendments and arguments of counsel, and the rulings and comments of the Patent Office. But all must be read in the light of the art as then understood. While much can be said to the effect that claim 4 can be construed as not excluding the use of the nozzle head and dust receptacle as one piece, more especially in view of the language of claims 5 and 6 ("a nozzle * * * removable from the casing independently of said receptacle; * * * a nozzle head independent of said dust receptacle * * *"), yet I am willing to adopt the construction that claim 4 means a dust receptacle separable from the nozzle head.

[2] In determining whether the obvious equivalent of defendant defeats claim 4, it must be remembered that the test is the character of

treatment to be accorded to the patent.   There will not be found a better illustration of the proposition that courts will not permit mere literalism to defeat a meritorious patent than Auto Vacuum Freezer Co. v. William A. Sexton Co., 239 Fed. 898, in which Judge Coxe recently said:

"But it is also true that when the patentee has produced a structure which inaugurates a new industry and at once becomes popular, and therefore of great value, the court should be zealous so to construe the claims as to give validity to what it believes to be a meritorious invention.   The complainant had built up a large and flourishing business under its patent, when the defendant, with knowledge of the patent and the popularity of the complainant's freezer, began its infringement by copying the patented device even to minute details.   There can be little doubt that the defendant, with full knowledge of the McCann patent, continued to copy the structure there described and claimed and offered it to the public as a patented freezer.   In such circumstances the rule laid down in the cases above cited is relaxed to the extent of giving the patentee a range of equivalents sufficiently broad to hold as an infringer one who accomplishes the result by the same or similar means.   The doctrine of the cases relied on by the defendant must be read in the light of 'the authorities, which hold that even an element of a combination may be omitted if the defendant accomplishes the result by substituting equivalent means.   If this were not so, claims for combinations could be easily evaded."

And some of the principles which should govern the construction of claims have also been recently stated by Judge Hough in Outlook Envelope Co. et al. v. General Paper Goods Mfg. Co. et al., 239 Fed. 877, —— C. C. A. ——, decided January 12, 1917.

Now to the prior art:  If anybody thought of utilizing (for this hand-operated carpet sweeper) C. J. Harvey's (No. 673,603) Fig. 5, with its bung and ring arrangement, he would soon abandon it for Quist and Blanch, because it would be a clumsy affair in this compact device.

The Conover (No. 847,278) model, in evidence, is its own best refutation, as are the models of Baender and Dudley.   In Dudley, for instance, the bottom side up arrangement of the dust receptacle, and the necessity of tipping the machine upside down, constitute a convincing tribute to Quist and Blanch's ingenuity; and one need but read the Sturgeon and the Applegate patents to see how far in this regard they were from Quist and Blanch.

The Hatch and Goeser device (No. 980,944) has a fan and motor back of the casing, and the nozzle must be screwed into position, and the nozzle and front casing are in two parts.

The failure in this regard, among others, of Baender, Dudley, and Sturgeon, who devoted themselves especially to pneumatic carpet sweeping devices of this type, is perhaps the best evidence in support of the conclusion that, but for the teaching of Quist and Blanch, the arrangement in defendant's structures would never have been thought of, except, of course, by some one who in turn would have been an inventor.

When an accomplishment is known, it is not difficult to recur to the prior art, and to reconstruct with the knowledge of to-day what no one knew yesterday, and then to add something here and there to remedy the defects which even such a reconstruction exposes; and the trite but none the less sound observation may be repeated that

defendant may always utilize any disclosure or disclosures of the prior art or any combination thereof without fear or favor.

This patent is entitled to fair consideration, and Quist and Blanch would, indeed, fail to reap the full reward for their labors if the claim in issue could be avoided by doing the same thing in substantially the same way, with the same result, by means of a colorable change, which makes one piece out of two.

Plaintiff may have the usual decree and costs. Submit decree on five days' notice.