## BELBER TRUNK & BAG CO. v. SEWARD TRUNK & BAG CO.

## SAME v. AMERICAN TRUNK & BAG CORPORATION.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

Nos. 81, 82.

1. **Patents ⬤178—Language of reissue claim held applicable to patented structure.**

In a reissue patent for a trunk lock, a claim calling for a plurality of hooks mounted on a sliding bar applies to a construction whereby the hooks are pivoted on the trunk and fastened to the sliding bar, so that they move with the movement of the bar.

2. **Patents ⬤157(2)—Literalism of claim should not defeat meritorious patent.**

Mere literalism of statement of the claim should not defeat a meritorious patent.

3. **Patents ⬤328—Reissue 14,143, claim 1, for trunk-locking device, held valid, without limitation to particular structure.**

The reissue patent, No. 14,143, claim 1, for a trunk-locking device, *held* valid as disclosing invention, without limiting it to the particular structure in which the locking hasp is located at one end of the trunk.

4. **Patents ⬤328—Reissue 14,143, claim 1, for trunk-locking device, held not anticipated.**

Reissue patent, No. 14,143, claim 1, for a trunk-locking device in which the locking hasp operates a sliding bar, which engages hooks on one section of the trunk with lugs on the other section, *held* not anticipated by an earlier patent, in which the hooks and lugs were engaged by the action of springs.

Appeals from the District Court of the United States for the Southern District of New York.

Separate suits for infringement of a patent by the Belber Trunk & Bag Company against the Seward Trunk & Bag Company and against the American Trunk & Bag Corporation. Decree for defendant in each case, and plaintiff appeals. Reversed.

Frank S. Busser, of Philadelphia, Pa., and Eugene Eble, of New York City, for appellant.

Watson E. Coleman and Frederick S. Stitt, both of Washington, D. C., for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. These are separate suits against each of the appellees named and involve the same issues. The suits were tried together and resulted in decrees holding the patent invalid in view of the prior art. They have been consolidated as one and will be treated here in one opinion.

The patent in suit is a reissue patent dated May 30, 1916, No. 14,143, and covers a trunk-locking device. Infringement was admitted

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by both appellees at the trial.  The defenses relied upon were that the reissue was invalid and that the patent did not involve invention.  The District Judge overruled the first defense, but sustained the second, which resulted in the decrees appealed from.  The invention is described with simplicity in claim 1, and is as follows:

"1. The combination, with a trunk having two sections hinged together, of locking means therefor comprising a lock casing rotatably mounted on one of said sections, a plurality of fixed locking members on the other of said sections, an endwise movable bar, a plurality of locking hooks on said bar, said locking hooks being moved with said bar into and out of engagement with said fixed locking members, and means connecting said bar with said lock casing to impart to said bar positive endwise movement in either direction when said lock casing is turned into and out of its locking position."

The particular advantages of the device are manifest.  Its sale has resulted in a very considerable commercial success.  It is referred to in the testimony as "a very ready seller," having "wonderful talking features," and is in extensive use upon wardrobe trunks; and it is said that the demand for this type of trunk greatly increased when the trunk was equipped with the locking feature as shown by the patent. The advertisements put out by the appellees are strong testimony in support of the value and utility of the patented invention.

It is contended by the appellees that the reissue was applied for the purpose of granting a monopoly, that there was no mistake or inadvertence in the original patent, that the claims of the reissue find no real support in the original, that the claims are misdescriptive, in that claim 1 calls for a plurality of locking hooks on the endwise movable bar, and that such locking hooks in the actual structure are not on the bar, but are mounted on the trunk body.  The reissue was applied for three months after the issue of the original.  No intervening rights have been prejudiced, nor is that question raised, and it appears that the patentee has acted diligently.  We can see no difference in principle in this case and the very many in which broader reissues have been sustained.

[1] The objection that the language of the claim does not apply to the patented structure, because the locking hooks are not on the endwise movable bar, but are mounted on the trunk body, has no force. The hooks are on the bar as much as on the trunk body, being pivotally attached to both, and move back and forth with the bar, an invention practically the same as if they were rigid with the bar.  This is also true of the appellees' structure.  The language of the claim is apt, as well as applicable to the structure disclosed in the patent.  The District Judge held that the position of the locking hasp at one end of the trunk was an essential, as well as novel, element of the invention, and said that, if claim 1 had read "lock casing rotatably mounted on the end of one of said sections," instead of "a lock casing rotatably mounted on one of said sections," it would have to be sustained as patentable over the prior art.  The court held that, if the patent was meritorious, the appellees copied it.

[2] Mere literalism in statement of the claim should not defeat a meritorious patent.  Domestic Vacuum Cleaner Co. v. Bissell Carpet Sweeper Co. (D. C.) 242 Fed. 943.  We do not think that the patented invention was the mere conception of the location of the locking hasp.

at the end of the trunk. It involved a mechanical combination, whereby the location of the locking hasp might be made at the end of the trunk, and an examination of the prior art does not disclose to us that this mechanical combination was anticipated.

[3] We do not think there is any implied limitation in the language of the claims that the locking hasp shall be located at the end of the trunk. Claim 1 will be sustained without any such implied limitation. We think that in the patent in suit there is present both the conception of the function as well as the selection of the means whereby the function can be operatively carried out, and that therefore what the patentee has done amounts to invention. The patent has been reduced to practical application. In the appellant's structure, to unlock the trunk, the locking hasp is turned, thereby sliding the single bar 18 and withdrawing the several hooks 17 from the respective locking members 19. The trunk sections can then be swung open. To lock the trunk, the sections are swung together and the locking hasp is turned in the opposite direction, thereby sliding the bar 18 and not only forcing the hooks into locking engagement with the locking members 19, but drawing the two trunk sections tightly together. It thus appears that the locking and unlocking in appellant's structure involve a mere turning by hand of the locking hasp back and forth, and this while in a standing position, avoiding bending down. This operation in both cases is positive.

[4] Nor do we think that the patents of the prior art anticipated what the patentee invented. Chief reliance of anticipation is placed by the appellees on the patent to King, No. 897,377. There are several points of similarity to the patented device. The locking hasp 2 is essentially the same, and it is turnably mounted on one trunk section. The other trunk section carries two fixed locking members. The locking hasp, when turned, operates mechanisms which engage the tongues 36 and thereby lock the trunk sections together. The locking hasp is centrally located on the trunk. To unlock, the lock casing is turned, thereby causing the bolts 42 to be drawn from engagement with the tongues 36. The hasp must be held in its turned position with one hand and the lid of the trunk lifted with the other hand, until the tongues 36 clear the bolts 42. When the hasp is released, the spring 44 returns the bolts 42 to the locking position, thereby returning the locking hasp to its original position. To lock, the lid is simply closed, the tongues 36 forcing the bolts 42 out of the locking position, to which they are returned by the springs 44.

In the appellant's construction, the locking and unlocking involve the mere turning by hand of the lock hasp back and forth, the operation in both cases being positive; while in the King structure the locking is purely automatic, reliance being had upon spring-pressed bolts, whereas unlocking involves turning the locking hasp by one hand against the tension of a pair of springs, and holding it there while the trunk lid is manipulated by the other hand. In the King structure, the bolts are not brought into their locking position by the manipulation of the swinging hasp about its pivot, but they are brought to that position only by reason of the spring tension 44. There is no positive ac-

tuation in the locking of the trunk. The sole function of the swinging hasp and the connection through the cross-arm *14* and link *47* to the bolts *42* is to withdraw the bolts *42* from the locking position. The swinging of the hasp in no way affects the locking operation as in the case of the appellant's patent. If the springs *44* in King's construction were omitted, the device would be inoperative. The presence of the spring, therefore, cannot possibly be ignored, because it is only by reason of their presence that the device shown and described by King will cause the bolts to move outwardly into the slots *37* and sockets *38* toward the respective ends of the trunk body, and if the slots *46* were omitted, and the connecting links *47* were positively pivoted without the play permitted by slots *46*, as is the case in appellant's patent, the King structure would utterly fail to operate, "wherein the tongues *36* will be forced into the socket *48* by the weight of the lid." No trunks were built under the King patent.

King's patent is different from the appellant's because of the pin and slot connections and the springs, and the locking hasp is placed at the center of the trunk. The appellant's invention does not read upon the King claims. The appellant's locking mechanism has advantages over King's, namely, strength, durability, and simplicity in the absence of springs; also the automatic drawing of the trunk sections together and the locking operation, and the ability to lock and unlock the trunk without stooping or bending.

The other patents of the prior art, to Simons, Parker, and Hoehn, we have examined, and find they did not anticipate appellant's patent. The utility and novelty of the patented structure over the others is demonstrated by the fact that the appellant's device achieved marked recognition in the trade and at once obtained a high commercial success.

We think the patentee's conception was new, and brought together the mechanical instrumentalities whereby a new result was achieved. Appellant is entitled to a decree in each case, holding his patent valid and infringed.

Decrees reversed